FRED S. JAMES & COMPANY, Respondent, *v.* SECOND RUSSIAN INSURANCE COMPANY, Appellant.

**Pleadings — defense — action by assignee of claim of British corporation against Russian insurance company — defense that defendant was nationalized or dissolved by Soviet government insufficient.**

1. Plaintiffs' assignor, a British insurance company, entered into contracts or treaties with the defendant, a Russian insurance corporation, by which the latter reinsured the former's marine risks.

Losses were sustained and the British company attempted to recover them from the defendant. This demand having been refused, the cause of action was assigned to the plaintiff, a domestic corporation. The defendant admits that it is engaged in business in New York, but urges as a defense that its corporate life was ended by a decree of the Russian Soviet government nationalizing the business of insurance companies in Russia; that by the same decree the companies were released from the payment of debts and liabilities; that Great Britain has recognized the existence of the Russian Soviet government and by a trade agreement set forth in the answer has confirmed the confiscation of the debts owing to its nationals; that all these things were done before the transfer to the plaintiff and that the plaintiff is seeking to enforce a right of action, which, at the time of the assignment, had already been extinguished. The defense that the defendant corporation is dead is not a " defense " in its proper legal meaning, but treated as a suggestion of its death to be heeded by the court, the result is not changed. The decree of the Russian Soviet government nationalizing its insurance companies has no effect in the United States unless it may be to such extent as justice and public policy require that effect to be given. Neither comity nor public policy requires us to enforce a mandate of confiscation at the behest of such a government to the prejudice of either our own citizens or those of any friendly power seeking justice in our courts.

2. The contention cannot be sustained that the trade agreement of 1921 between Great Britain and Soviet Russia was to extinguish by force of eminent domain the right of action of British nationals against Russian corporations and to put their own government in place of defendant and of others similarly situated as a substituted debtor. In fact no such substitution of liabilities was established by the trade agreement, and it cannot be held that Great Britain by exacting from Russia a promise of just treatment in the future, presently extinguished the rights of action of its nationals which till then had been enforcible.

*James & Co.* v. *Second Russian Ins. Co.*, 210 App. Div. 82, affirmed.

(Argued November 25, 1924; decided January 21, 1925.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 2, 1924, which affirmed an order of Special Term denying the defendant's motion that the plaintiff be directed to reply to its defenses.

The following questions were certified:

" 1. Is the new matter contained in the first separate defense set out in the answer, if true and not avoided in some manner, sufficient in law as a defense to the causes of action?

" 2. Is the new matter contained in the second separate defense set out in the answer, if true and not avoided in some manner, sufficient in law as a defense to the causes of action?

" 3. Is the new matter contained in the third separate defense set out in the answer, if true and not avoided in some manner, sufficient in law as a defense to the causes of action?

" 4. Is the new matter contained in the fourth separate defense set out in the answer, if true and not avoided in some manner, sufficient in law as a defense to the causes of action? "

*Albert Massey* and *Michael S. Gleason* for appellant. Recognition of the Soviet *régime* by the United States is not material in the present action. (*Wulfsohn* v. *Russian S. F. S. Republic*, 234 N. Y. 372; *Russian S. F. S. Republic* v. *Cibrario*, 235 N. Y. 255; *Nankivel* v. *Omsk All-Russian Government*, 237 N. Y. 150; *Luther* v. *Sagor*, 3 K. B. 532; *Russian C. & I. Bank* v. *Mulhouse*, 40 Times L. R. 837; *Oetjen* v. *Central Leather Company*, 246 U. S. 297; *Mauran* v. *Ins. Co.*, 6 Wall. 1; *Thorington* v. *Smith*, 8 Wall. 1; *Horn* v. *Lockhart*, 17 Wall. 570; *United States* v. *Ins. Co.*, 22 Wall. 99; *MacLeod* v. *United States*, 229 U. S. 416.) The contract contemplating performance in Russia or England, and the parties being corporations created by and existing under the laws of Great Britain and Russia respectively, is governed by the laws of Great Britain and Russia. (*Bank of Augusta* v. *Earle*, 13 Pet. 519; *Canada Southern Railway Co.* v. *Gebhard*, 109 U. S. 527.) The Second Russian Insurance Company was liquidated and nationalized in Russia by the Soviet government. (*Oetjen* v. *Central Leather Co.*, 246 U. S. 303; *Wulfsohn* v.

*Russian S. F. S. Republic,* 234 N. Y. 372; *Canada Southern Railway Co.* v. *Gebhard,* 109 U. S. 527.) Under the British-Soviet treaties Great Britain recognized the nonexistence of the Czarist corporation, relinquished the claim of her national here sued on, accepted the Soviet government as debtor, and assumed the duty of indemnifying her nationals. (*Bank of Augusta,* 13 Pet. 519; *C. S. Ry. Co.* v. *Gebhard,* 109 U. S. 527; *Ware* v. *Hylton,* 3 Dall. 199; *Gray* v. *United States,* 21 Ct. Cl. Rep. 340; *Meade* v. *United States,* 2 Ct. Cl. Rep. 224; 9 Wall. 691.)

*Carl Sherman, Attorney-General (Edward G. Griffin* and *J. Du Pratt White* of counsel), for Superintendent of Insurance of the State of New York. The Russian insurance companies have been extinguished. (*Wulfsohn* v. *Russian Republic,* 234 N. Y. 275; *Sea Ins. Co. Rossia* v. *Ins. Co.,* [1923] 1 K. B. 316; *R. C. & I. Bank* v. *Mulhouse,* [1923] 2 K. B. 630; *United States* v. *Rice,* 4 Wheat. 246; *Thorington* v. *Smith,* 8 Wall. 1; *United States* v. *Ins. Cos.,* 22 Wall. 99; *Lewis* v. *Hearne,* 34 Tex. 382; *MacLeod* v. *United States,* 229 U. S. 416.) If this court should hold that the Russian insurance companies still exist, or that even if they do not exist, yet the courts of this State may not consider the Soviet legislation of nationalization and dissolution, still such companies may not sue in the courts of this State. (*Wulfsohn* v. *Russian Republic,* 234 N. Y. 374.)

*David Rumsey* and *Louis J. Wolff* for respondent. The appellant has not been dissolved or extinguished and is subject to suit in our courts. (*Wulfsohn* v. *Russian Republic,* 234 N. Y. 372; *Russian Republic* v. *Cibrario,* 235 N. Y. 255; *Nankivel* v. *Omsk All-Russian Government,* 237 N. Y. 150; *Oetjen* v. *Central Leather Co.,* 246 U. S. 297; *Ricaud* v. *American Metal Co.,* 246 U. S. 304; *S. R. Ins. Co.* v. *Miller,* 297 Fed. Rep. 404; *Russian Bank* v. *Mulhouse,* 39 Times L. R. 561; [1923] 2 K. B. 630; *Banque*

*Internationale* v. *Goukassow,* 39 Times L. R. 574; [1923] 2 K. B. 682; *Insurance Co.* v. *Rossia Insurance Co.,* 17 Lloyd's Law List Reports, 316; *Bourne* v. *Bourne,* 209 App. Div. 419; *Gumoens* v. *Equitable Trust Co.,* 201 N. Y. Supp. 96; *Murphy* v. *Second Russian Ins. Co.,* 208 App. Div. 144.)

*John W. Hogan, Paul Bonynge* and *Wendell P. Barker* for Anchor Insurance Company of New York et al., *amici curiæ.* The alleged decrees of the Soviet government cannot be given the effect claimed for them by the appellant. (*Wulfsohn* v. *Russian Republic,* 234 N. Y. 372; *Russian Republic* v. *Cibrario,* 235 N. Y. 255.)

*Frederick B. Campbell* and *Paul C. Whipp, amici curiæ.* The question of the existence and standing in the courts of this State of Russian insurance companies is not affected by the alleged Soviet decrees. (*Gelston* v. *Hoyt,* 3 Wheat. 246; *Jones* v. *United States,* 137 U. S. 202; *Underhill* v. *Hernandez,* 168 U. S. 250; *Oetjen* v. *Central Leather Co.,* 246 U. S. 297; *Ricaud* v. *American Metal Co.,* 246 U. S. 304; *Russian S. F. S. Republic* v. *Cibrario,* 235 N. Y. 255; *Rose* v. *Himely,* 4 Cranch, 241; *The Neuva Anna,* 6 Wheat. 193; *Cherokee Nation* v. *State of Georgia,* 5 Pet. 1; *Williams* v. *Suffolk Ins. Co.,* 13 Pet. 415; *Kennett* v. *Chambers,* 14 How. 38; *Jones* v. *United States,* 137 U. S. 202.) The Soviet decrees, even if they are to be considered by this court, do not effect the dissolution of Russian insurance companies. (*Russian C. & I. Bank* v. *Comptoir d'Escompte de Mulhouse,* 40 Times L. R. 837.) The Soviet decrees of confiscation, even if intended to have extraterritorial effect, cannot in any event have any validity outside the territorial jurisdiction of Russia, and even in the event of recognition of the Soviet republic, American courts will not enforce such decrees, because they are contrary to the spirit of our institutions. (*State of Colorado* v. *Harbeck,* 232 N. Y. 71; *Marshall* v. *Sherman,* 148 N. Y. 9; *Hunt-*

*ington* v. *Atrill,* 146 U. S. 657; *The Antelope,* 10 Wheat. 66, 123; *Loucks* v. *Standard Oil Co.,* 224 N. Y. 99, 102; *Hamilton* v. *Accessory Transit Co.,* 26 Barb. 46; *Second Russian Insurance Co.* v. *Miller,* 297 Fed. Rep. 404.)

*B. F. Sturgis* and *Hartwell Cabell* for John F. Murphy, *amicus curiæ.* The Soviet decrees have no extraterritorial effect. (*Rose* v. *Himely,* 4 Cranch, 241; *The Appollon,* 9 Wheat. 362; *Hilton* v. *Guyot,* 159 U. S. 113; *S. R. Ins. Co.* v. *Miller,* 297 Fed. Rep. 404.) In the absence of recognition, the rule of comity cannot be applied. (*Bank of Augusta* v. *Earle,* 13 Pet. 519; *Russian Republic* v. *Cibrario,* 235 N. Y. 255; Story on Conflict of Laws, §§ 28, 63; *Bradstreet* v. *Neptune Ins. Co.,* 3 Sum. 600; *C. S. Ry. Co.* v. *Gebhard,* 109 U. S. 546.) The effect of the so-called nationalization decrees was not to dissolve the Second Russian Insurance Company. (*The Ambrose Light,* 25 Fed. Rep. 410; *The Penza,* 277 Fed. Rep. 91; *Russian Commercial Bank* v. *Mulhouse,* [1923] 2 K. B. 630; *Banque Internationale de Comerce de Petrograd* v. *Goukassow,* [1923] 2 K. B. 682.)

CARDOZO, J. The Eagle, Star & British Dominions Insurance Company, Ltd., plaintiff's assignor, entered into contracts or treaties with the defendant, Second Russian Insurance Company, a Russian corporation, by which the latter reinsured the former's marine risks to the extent therein stated. Losses were sustained and the British company attempted to recover them from its Russian reinsurer. The demand having met with a refusal, the cause of action was assigned to the plaintiff, a domestic corporation. The defendant, which has appeared generally, admits that it is engaged in business in New York, but urges as a defense that its corporate life was ended by a decree of the Russian Soviet government nationalizing the business of insurance companies in Russia; that by the same decree, the companies were

released from the payment of debts and liabilities; that Great Britain has recognized the existence of the Russian Soviet government, and by a trade agreement set forth in the answer has confirmed the confiscation of the debts owing to its nationals; that all these things were done before the transfer to the plaintiff; and that the plaintiff, taking no greater rights than its assignor, is seeking to enforce a right of action which at the time of the assignment had already been extinguished. The defendant moved that the plaintiff be directed to reply to its defenses, and the Appellate ·Division, refusing that relief, has certified questions which require us to determine whether the defenses, variously pleaded, are sufficient on their face.

We deal first with the so-called defense that the corporation which defends is dead and so incapable of defending (*Martyne* v. *American Union Fire Ins. Co.*, 216 N. Y. 183, 190; *Sturges* v. *Vanderbilt*, 73 N. Y. 384). This is obviously not a " defense " at all, if ·the word defense is employed ·as one of art, with a proper legal meaning. A· corporation with vitality sufficient to answer a complaint has by the very terms of the hypothesis vitality sufficient to permit it to be sued. The shades of dead defendants do not ·appear and plead. Expedients, of course, there are whereby a court may be informed that jurisdiction has been halted. If the corporation is defunct, those in charge of its assets may place upon the record a suggestion of its death, may stay the progress of the suit, and may even vacate the process that assumes to bring it into court (*Nankivel* v. *Omsk All Russian Government*, 237 N. Y. 150; *Martyne* v. *Am. Union Fire Ins. Co., supra*). Such are not the expedients that by ·the questions now certified to us we are asked to approve or to condemn. But if we put the questions to one side and view the statements of the answer, verified by the defendant's officers, as a suggestion of its death, to be heeded even in this court, lest a controversy with an

unreal litigant be unwittingly determined, the result will not be changed. The decree of the Russian Soviet government nationalizing its insurance companies has no effect in the United States unless, it may be, to such extent as justice and public policy require that effect be given. We so held in *Sokoloff* v. *National City Bank* (239 N. Y. 158). Justice and public policy do not require that the defendant now before us shall be pronounced immune from suit. In the circumstances exhibited by this record, we find it profitless to consider whether the decree was intended to put the nationalized companies out of existence altogether or on the other hand to preserve them as corporate entities though in the ownership of the government (*Russian Commercial & Industrial Bank* v. *Comptoir D'Escompte de Mulhouse*, House of Lords, 40 T. L. R. 837). Our concern is not so much with the consequences intended by the authors of the decree as with those that will be permitted in other jurisdictions where the intentions of its authors are without effect as law. The defendant has complied with the provisions of our statutes prescribing the conditions in which foreign insurance companies may do business within our borders (Insurance Law, §§ 27, 28; Consol. Laws, ch. 28). It has put itself for many purposes in the same category as our own domestic corporations (*Comey* v. *United Surety Co.*, 217 N. Y. 268, 274). Far from suspending its activities since the promulgation of the decree which is said to have ended its existence, it has since then written policies of insurance covering millions of dollars of risks, has collected premiums in large amounts, and by the admissions of its answer is doing business to-day. If the Russian government had been recognized by the United States as a government *de jure*, there might be need, even then, to consider whether a defendant so circumstanced, continuing to exercise its corporate powers under the license of our laws, would be heard to assert its extinction in avoidance

of a suit (cf. Thompson on Corporations, § 6569; 2 Mora-
wetz, Private Corporations [2d ed.], § 1003; 37 Harvard
Law Review, 610). In the existing situation, the refine-
ments of learning that envelop and to some extent obscure
the definition of *de facto* corporations are foreign to
our inquiry. So long at least as the decree of the Russian
government is denied recognition as an utterance of
sovereignty, the problem before us is governed, not by
any technical rules, but by the largest considerations of
public policy and justice (*MacLeod* v. *U. S.*, 229 U. S.
416, 428, 429). When regard is had to these, the answer
is not doubtful. The defendant asks us to declare its
death as a means to the nullification of its debts and
the confiscation of its assets by the government of its
domicile. Neither the public policy of the nation, as
established by President and Congress, nor any consid-
eration of equity or justice exacts an exception in such
conditions to the need of recognition. We do not say
that a government unrecognized by ours will always be
viewed as non-existent by our courts though the sole
question at issue has to do with a transaction between
the unrecognized government and a citizen or subject
of a government by which recognition has been given.
To say this might seem to imply, for illustration, that
a voluntary conveyance by a British citizen to the Soviet
government would be viewed as a nullity in the United
States on some theory that the grantee though recognized
in Great Britian was without capacity to take. No such
sweeping declaration is essential to the decision of the
case before us. We deal now with the single question
whether the defendant has an existence sufficient to subject
it to suit in the domestic forum. That is a question
which the law of the forum will determine for itself.
Liability to be sued is quite distinct from liability to
be held in judgment upon the facts developed in the suit.
We keep our ruling within these limits, and hold that
the defendant is amenable to the process of our courts.

If existence be assumed, the question remains whether liability has been extinguished. Was it extinguished by the Soviet decree canceling or releasing the debts of the nationalized companies? If not, was it extinguished by the action of Great Britain in negotiating the trade agreement of 1921? As to the Soviet decree, we think its attempted extinguishment of liabilities is *brutum fulmen,* in England as well as here, and this whether the government attempting it has been recognized or not. Russia might terminate the liability of Russian corporations in Russian courts or under Russian law. Its fiat to that effect could not constrain the courts of other sovereignties, if assets of the debtor were available for seizure in the jurisdiction of the forum (*Barth* v. *Backus,* 140 N. Y. 230; *Matter of People* [*City Equitable Fire Ins. Co.*], 238 N. Y. 147, 152; cf. *Matter of Barnett's Trusts,* 1902, 1 Ch. 847). The decree invoked by the defendant is not in any true sense a decree of bankruptcy, though even if it were, there would be limits to its extraterritorial validity. A decree of bankruptcy presupposes a distribution of the assets for the benefit of creditors, and this decree is one of confiscation, appropriating the assets for the benefit of the Soviet republic. One government does not execute the tax laws of another (*State of Colorado* v. *Harbeck,* 232 N. Y. 71, 82), nor help another in enforcing a penalty or forfeiture (*Loucks* v. *Standard Oil Co.,* 224 N. Y. 99, 102). If this is so where the foreign statute or decree is that of a recognized government *de jure,* it is still more clearly so where the decree is that of a government to which recognition has been denied. Neither comity nor public policy requires us to enforce a mandate of confiscation at the behest of such a government to the prejudice either of our own citizens or of those of any friendly power seeking justice in our courts.

The defendant insists, however, that though the Soviet

decree standing by itself may have been inoperative in England to terminate the right of recourse to assets beyond the territory of Russia, yet the effect of the trade agreement of 1921 between Great Britain and Soviet Russia was to extinguish by force of eminent domain the rights of action of British nationals against Russian corporations and to put their own government in place of the defendant and of others similarly situated as a substituted debtor (citing *Ware* v. *Hylton,* 3 Dall. 199, 245; *Gray* v. *U. S.,* 21 Ct. Claims, 340, 390; 2 Wharton, Digest Int. Law, p. 709, § 248; cf. *Hijo* v. *U. S.,* 194 U. S. 315, 323; *The Blonde,* 1922, 1 A. C. 335). We pass the question whether such an agreement, if made, would be disregarded by our courts because of our refusal to recognize the existence as a government of one of the parties to the compact. We assume, though we are not required to decide, that if the compact existed, we would not treat it as a nullity. A sufficient answer is that no such substitution of liabilities was established by the trade agreement or thought of in its making. All that the trade agreement does is to declare the principles upon which a general peace treaty, if made, will be concluded. The Russian government declares that it recognizes *in principle* that it is liable to pay compensation to private persons who have supplied goods or services to Russia for which they have not been paid. The British government makes a corresponding declaration. Plaintiff's claim is neither for goods nor for services, even if a recognition *in principle* of a duty of reparation were thought to be important. Beyond this, both parties declare that " all claims of either party or of its nationals against the other party in respect of property, or rights, or in respect of obligations incurred by the existing or former governments of either country shall be equitably dealt with in the formal general peace treaty referred to in the preamble." We are to observe that the claims here mentioned are those, not against a Russian citizen

1925.] Statement of case. [239 N. Y. 259]

or corporation, but against the Russian government; and that even as to these, the obligations of the declaration are wholly future and executory. What is equitable is to be agreed upon at some indefinite time thereafter if an agreement can be reached. We should be straining words to the breaking point if we held that Great Britain, by exacting from Russia a promise of just treatment in the future, presently extinguished the rights of action of its nationals which till then had been enforcible.

The order should be affirmed with costs, and the questions certified answered in the negative.

HISCOCK, Ch. J., POUND, McLAUGHLIN, ANDREWS and LEHMAN, JJ., concur; CRANE, J., absent.

Order affirmed.