Fred S. James & Company, Respondent, *v.* The Rossia Insurance Company of America, Appellant.

First Department, May 6, 1927.

**Equity — plaintiff, assignee of claim of English insurance company arising in London, claims right to follow assets in hands of defendant insurance company to satisfy claim against Russian insurance company — defendant took over American assets from Russian company and assumed American liabilities of latter company upon confiscation of business in Russia — transfer of assets to defendant was made in good faith with full authority and for full value at time plaintiff's debtor was solvent — there are assets at present existing available to creditor — plaintiff not entitled to equitable relief, not having exhausted available remedies in England where claim arose — denial of motion to dismiss complaint for insufficiency does not infer plaintiff has good cause of action — allegations of complaint are broader than proof adduced at trial.**

This is an action by the assignee of a claim against a Russian insurance company to follow assets alleged to be in the possession of the defendant. The claim arose in England. The plaintiff cannot succeed in this action, since it appears that the defendant was duly incorporated in this country and thereafter acquired all the American assets of the Russian insurance company and assumed the American liabilities of that company and that it paid full value for the assets so acquired upon the confiscation of business in Russia. It also appears on the question of good faith that the transaction by which the defendant acquired the assets had been in contemplation for some time and there is no evidence that the Russian insurance company was insolvent when the assets were sold to the defendant, and, in fact, the evidence shows that the company was at that time solvent.

Even though insolvency had been established, the plaintiff could not recover, since it has failed to show that no assets are available in the jurisdiction in

which the claim arose. In fact, it appears that in liquidation proceedings instituted in England by the plaintiff's assignor there are sufficient assets to cover the claim owned by the plaintiff.

Another reason why the plaintiff cannot recover is that it has not established its claim against the Russian company, the principal debtor, and exhausted its available remedies to satisfy whatever claim it may establish and there are no exceptional circumstances in this case excusing the plaintiff from performing this condition precedent to the right to maintain this action.

The plaintiff's contention that there was a surplus of American assets over the amount necessary to pay in full the claims of the American creditors at the time of the purchase, and that its claim should be satisfied out of that surplus is without force, since, as already stated, the defendant paid full value for the assets and it will not be required to pay a second time without any evidence to show that the consideration which it paid to a French corporation, which held itself out as receiving the assets of the Russian company, was not received by the French corporation which has made itself responsible for the debts of the Russian company.

Furthermore, there is no equity in plaintiff's position, since it has not exhausted its remedy against the assets of the Russian insurance company in England, and since, if the plaintiff can now satisfy its claims out of the surplus American assets, other creditors may do likewise, which would place the defendant in a position of seeking reimbursement in foreign jurisdictions and would exonerate foreign assets from the just claims of creditors there.

Furthermore, if plaintiff should recover, a hardship might result to subsequent creditors of defendant in this jurisdiction.

The denial of a motion to dismiss the complaint on the ground of insufficiency is not an adjudication that the plaintiff has a good cause of action, for the complaint in this action is much broader than the evidence, inasmuch as the evidence does not establish active fraud which was alleged or that the plaintiff has an established claim which it is unable to collect from the assets of the Russian company in England, or the other allegations of the complaint in reference to consideration for the transfer, lack of authority and insolvency.

APPEAL by the defendant, The Rossia Insurance Company of America, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 7th day of April, 1926, upon the decision of the court rendered after a trial at the New York Special Term, granting plaintiff recovery under general excess reinsurance treaties with The Rossia Insurance Company of Petrograd for the years 1914, 1915 and 1916, and appointing a referee to determine the amounts of such recovery.

*Nathan L. Miller* of counsel [*Hartwell Cabell* with him on the brief; *Cabell, Ignatius & Lown,* attorneys], for the appellant.

*Charles E. Hughes* of counsel [*Louis J. Wolff* and *David Rumsey* with him on the brief; *Rumsey & Morgan,* attorneys], for the respondent.

*James H. McIntosh* of counsel [*Alexander & Green,* attorneys], for Howard E. Jones, a stockholder of the defendant, as *amicus curiæ.*

FINCH, J.   The question presented by this appeal is whether the plaintiff may now follow in equity assets in the hands of this defendant, a third party, upon a claim not yet established and before the legal remedies to establish and collect the same as against the principal debtor have been exhausted.   If this defendant is merely The Rossia Insurance Company of Petrograd, then for the purposes of this decision it may be assumed that the case of *James & Co.* v. *Second Russian Ins. Co.* (239 N. Y. 248) is applicable and the plaintiff may succeed.   On the other hand, if this defendant is an independent third party whose assets the plaintiff is seeking to reach to satisfy a claim against The Rossia Insurance Company of Petrograd, then the plaintiff may not succeed until it shall have shown certain facts prerequisite to its success.   The main question involved upon this appeal, after all has been said, thus narrows down to whether this defendant shall be considered the same as The Rossia Insurance Company of Petrograd under another name, or whether it must be treated as an independent third party who has taken a portion of the general assets of The Rossia Insurance Company of Petrograd, and if so, whether such taking was without fraud, for full value and at a time when The Rossia Insurance Company has not been shown to have been insolvent, there being no doubt upon this record but that the legal title to these assets is in this defendant, whatever may be said as to the equitable rights attaching thereto.

The plaintiff claims to be a creditor of The Rossia Insurance Company of Petrograd, as assignee of a claim of an English insurance company, which claim arose in London in connection with contracts of reinsurance between the home office of the English company in London and the home office of The Rossia Insurance Company in Petrograd.

In November, 1918, the Russian Socialist Federated Soviet Republic declared the business of insurance a State monopoly and decreed the liquidation of all private insurance companies as of April 1, 1919.   For many years prior to that time The Rossia Insurance Company of Petrograd, a Russian insurance corporation, had conducted a branch of its business in this country, with headquarters first in New York and finally in Hartford, Conn.   In accordance with the requirements of the Insurance Laws of New York and Connecticut, The Rossia Insurance Company of Petrograd made deposits in the United States.   In 1914 the manager of the American branch of The Rossia Insurance Company of Petrograd, who was also its attorney in fact, was directed by said company to take steps to incorporate its said American branch.   In 1915 a special charter was applied for in the Connecticut Legislature and

granted. The consummation of the incorporation was delayed because of the war and an extension of the time to complete the incorporation was obtained. In February, 1918, The Rossia Insurance Company of Petrograd cabled to the New York branch office, " Wire whether new company ready take over business." In reply the American branch cabled: " We are completing organization of the American Rossia as quickly as possible to take over entire business with all assets and liabilities for the protection of all of our American contracts." The organization of the American corporation was finally completed, and on April 1, 1919, the defendant took over substantially all the American assets of the American branch of The Rossia Insurance Company of Petrograd, assuming all the American liabilities of the latter. On the same date the Russian Socialist Federated Soviet Republic, pursuant to its aforesaid decree, confiscated and took over the Russian business and the assets of The Rossia Insurance Company of Petrograd, and the directors of the latter fled from Russia and established themselves elsewhere.

As noted, the incorporation of the defendant as an independent unit of The Rossia Insurance Company of Petrograd had long been contemplated, and the plaintiff has failed to show that the transaction was either conceived or carried out in fraud. The transaction was submitted to and approved by the Insurance Departments of the States of New York and Connecticut and by the courts of Connecticut. The transfer was made to the defendant by the trustees who held the title to the securities. Under these circumstances there was a valid incorporation of the defendant and transfer to it of the American assets of The Rossia Insurance Company of Petrograd, and the legal title of the defendant to such assets is not open to attack. Indeed, in the course of the trial the plaintiff seems to have expressly conceded the validity to this extent of the transactions, except in so far as the assets transferred to the defendant included an alleged surplus of some $2,500,000 over and above the existing liabilities in America of The Rossia Insurance Company of Petrograd assumed by the defendant, and it is this surplus which the plaintiff is seeking to follow. The defendant, therefore, cannot be regarded as being The Rossia Insurance Company, and hence the case of *James & Co.* v. *Second Russian Ins. Co.* (*supra*) does not apply. The defendant thus stands in the position of a third party who has purchased the property of a debtor and is subject to the rules of law and equity applicable to such a situation.

We have reached the conclusion that whether judged by those well-known principles of law which are applicable to the following by a creditor of assets of a debtor into the hands of a third party,

or, on the other hand, judged by the application of larger principles of equity and comity, the plaintiff has failed, upon this record, to establish at this time a cause of action.   In considering a different situation arising out of the same Russian cause, present Chief Judge CARDOZO, in *James & Co.* v. *Second Russian Ins. Co.* (239 N. Y. 248, 256), said: " So long at least as the decree of the Russian government is denied recognition as an utterance of sovereignty, the problem before us is governed, not by any technical rules, but by the largest considerations of public policy and justice (*MacLeod* v. *U. S.*, 229 U. S. 416, 428, 429)."

At the time of the aforesaid transfer it does not appear that The Rossia Insurance Company of Petrograd was insolvent or that its only assets were the American assets.   Upon the contrary, it does appear that there were substantial assets in various European countries in addition to those taken over by the Russian Socialist Federated Soviet Republic.   In Paris the directors of The Rossia Insurance Company of Petrograd organized a corporation designated as the " Societe Commerciale & Financiere Caross " and described as " a holding company organized by the members of the board of directors and shareholders of The Rossia Insurance Company of Petrograd to concentrate in that holding company the assets of The Rossia Insurance Company of Petrograd outside of Russia." This so-called " Caross " became the holder on the books of the defendant of all the capital stock of the defendant (except directors' qualifying shares) and received dividends thereon from the defendant.   The " Caross " later sold the stock to Kidder, Peabody & Co. of New York, for approximately $3,500,000 in cash.   One searches this record in vain to find out what effect as bearing upon insolvency the so-called " Nationalization Decree " of the Soviet government had upon The Rossia Insurance Company of Petrograd. In addition, it appears upon this record that the directors in Paris are actually paying dividends upon the stock of The Rossia Insurance Company of Petrograd, provided that title to the shares of stock is properly proven.   The plaintiff has thus failed to prove insolvency at the time of the sale of the greater portion of its assets in the United States by The Rossia Insurance Company of Petrograd to the defendant.

The debtor corporation, not having been insolvent, had the right to deal with its property as it saw fit.   As was said by Mr. Justice PECKHAM in *McDonald* v. *Williams* (174 U. S. 397, 401): " When a corporation is solvent, the theory that its capital is a trust fund upon which there is any lien for the payment of its debts has in fact very little foundation.   No general creditor has any lien upon the fund under such circumstances, and the right of the corpora-

tion to deal with its property is absolute so long as it does not violate its charter or the law applicable to such corporation."

In the case at bar, also, not only has the plaintiff failed to show insolvency of The Rossia Insurance Company of Petrograd at the time the transfer was made, but even assuming this to have been shown, plaintiff still has failed to show that no assets are available in the jurisdiction in which the claim arose. On the contrary, it affirmatively appears that in the very liquidation proceeding which was institued in London by the plaintiff's assignor, sufficient assets are in the hands of the liquidator to pay in full the claim of the plaintiff and leave a surplus. Not only was there a surplus of assets in England over liabilities, but apparently each branch of The Rossia Insurance Company of Petrograd had large assets over liabilities. In addition, as noted, the directors of The Rossia Insurance Company of Petrograd, when in Paris, assumed to receive and hold for the benefit of The Rossia Insurance Company of Petrograd and its creditors not only the stock of the company organized in Copenhagen, which was the holding company for all the assets of The Rossia Insurance Company outside of Russia but also the $2,500,000 of stock which was issued in exchange for the assets of The Rossia Insurance Company of Petrograd. Since these directors assumed to hold for the benefit of The Rossia Insurance Company of Petrograd, a creditor should have no difficulty in enforcing his claim. Under the circumstances in the case at bar, while the general powers of the directors of The Rossia Company in Paris may be open to question, yet it will be assumed that their powers continue at least to the extent of preserving the assets of the corporation and holding the same for the benefit of the corporation and of its creditors. As Judge LEHMAN said in *Russian Reinsurance Co.* v. *Stoddard* (240 N. Y. 149, 160): "Greater difficulties are presented by the question of whether the directors of a corporation still have power to represent the corporation, when for a long period conditions have made it impossible for the corporation to function in its domicile or to hold meetings of shareholders who have the final right to determine all the details of the corporate affairs and to give directions to the board of directors. * * * Yet even though we should assume that the authority of the agent to defend the corporation from attack, to preserve its property and to ask the courts to redress wrongs committed against it continues * * *."

Upon well-settled legal principles, the plaintiff should first establish its claim against The Rossia Insurance Company of Petrograd, the principal debtor, and exhaust its available remedies to satisfy whatever claim it may establish.

As was said by Judge GRAY in *Trotter* v. *Lisman* (199 N. Y. 497, 501): " The rule was early established in this State, that creditors, seeking the aid of a court of equity to reach equitable assets of their debtor in satisfaction of their claims, must first have exhausted their legal remedies, according to the laws of this State, by the recovery of a judgment in one of its courts and the return of execution thereon unsatisfied. The authority of *Tarbell* v. *Griggs* (3 Paige Ch. 207), in which case the rule was asserted by the chancellor, has, repeatedly, been recognized in this court. (See *Rocky Mountain Nat. Bank* v. *Bliss,* 89 N. Y. 338; *Adee* v. *Bigler,* 81 id. 349; *De Coppet* v. *Cone,* 199 id. 56.) It was provided in the Revised Statutes, and the provision is incorporated in the Code of Civil Procedure,* that, where an execution against the property of a judgment debtor, issued out of a court of record, has been returned unsatisfied, the judgment creditor may maintain an action against the judgment debtor and any other person to compel the discovery of anything in action, or other property, belonging to the judgment debtor and to procure the satisfaction of the plaintiff's demand."

The plaintiff, as noted, has not exhausted its available remedies. In England its assignor put The Rossia Insurance Company of Petrograd in liquidation upon a petition which alleged large assets, and this statement has not been shown to be false. Upon the contrary, as already noted, there is evidence that there will be a surplus in the hands of the liquidator over and above all claims. It has been decided that jurisdiction over The Rossia Insurance Company of Petrograd may be obtained in England and such jurisdiction actually was obtained in the case of *Sedgwick Collins & Co.* v. *Rossia Ins. Co. of Petrograd* (L. R. [1926] 1 K. B. 1; 41 T. L. R. 663), and plaintiff's assignor actually has a proceeding pending upon like service. In France the plaintiff's assignor inquired whether payment would be made and, upon refusal, took no legal steps whatsoever. It may indeed be true that in exceptional circumstances where a plaintiff shows that it is impossible to obtain a judgment against the principal debtor and that no assets are available, even if such judgment should be obtained, a court of equity may dispense with these requirements, just as in the case of any other secondary or derivative cause of action. Equity does not require a vain or useless thing. (*Trotter* v. *Lisman,* 209 N. Y. 174.) In the case last cited, the amended complaint alleged facts showing that the plaintiff had recovered a judgment in Ohio against a corporation, on which execution was issued and returned unsatisfied; that it was not possible to sue the corporation in this State;

---

* Now Civ. Prac. Act, § 1189.—[REP.

that the suit involved property located here, where all the defendants resided, and that this was the sole property of the judgment debtor and which it was alleged had been fraudulently diverted to the defendants, stockholders of the debtor corporation. The court held that under such circumstances there was a direct claim based upon active fraud and that the necessity of first reducing the claim to judgment in this State might be dispensed with and the action maintained. The case at bar, however, as a derivative cause of action, presents no exceptional circumstances to take it out of the general rule, nor can it be said that any fraud has been shown so as to afford plaintiff a direct claim. In *Trotter* v. *Lisman* (*supra*, at p. 182), Judge GRAY, for the court, said: " It would seem an intolerable assertion, under the allegations of fact in this complaint, that the court was without jurisdiction to entertain an action for the recovery of the corporate assets appropriated by the defendants. The plaintiff's cause of action is not derived from the Iron Railway Company; it is one which belongs to him as a creditor to proceed directly against the persons to whom, through the action of the corporation and by the subsequent act of Lisman & Co., the only available corporate assets have been transferred in fraud of the rights of creditors."

The plaintiff has thus utterly failed to show that it has applied on its claim the assets which in equity and comity should be primarily applicable to the payment of the claim.

The previous statement of the facts also shows that the defendant gave full value for the assets received and that this consideration is held by The Rossia Insurance Company of Petrograd for its creditors. The plaintiff claims a surplus of $2,500,000 over the amount necessary to pay in full the claims of the American creditors at the time of the purchase by the defendant. In this connection it appears without contradiction that there was paid to the " Caross of Paris," which was holding itself out as receiving the assets for the benefit of The Rossia Insurance Company of Petrograd, $3,500,000, or $1,000,000 more than the value of the assets transferred in payment for the capital stock of the defendant which had been issued to the Rossia company in exchange for its American assets. It certainly would be incumbent upon the plaintiff, when the full consideration was thus paid for these assets, to show that said consideration did not find its way into the hands of those who are responsible for the debts of The Rossia Insurance Company of Petrograd before this defendant can be called upon to pay a second time.

Since the plaintiff relies upon an equitable right to follow these assets, let us examine the equities as between the plaintiff and the

defendant.   Upon this record it cannot be said that the equities are upon the side of the plaintiff.   It clearly appears that the plaintiff has not exhausted its available remedies against the assets in the country where the claim arose.   If this creditor of The Rossia Insurance Company of Petrograd can now satisfy its claim out of the surplus assets of this defendant, it must follow that every other creditor throughout the world can do likewise.   The result is either to throw upon this defendant, through subrogation or otherwise, the proof of a claim of which, so far as this record shows, it is ignorant, in foreign jurisdictions, or, if no subrogation exists, to exonerate assets in foreign jurisdictions from the just claims of creditors there.   This would be inequality and injustice not only as regards the assets in foreign jurisdictions, but also, on the other hand, would impose an unjust burden upon the defendant, and might result in great hardship to subsequent creditors of the defendant in this jurisdiction who have become creditors upon the responsibility of the defendant as disclosed by its assets here.

The respondent urges that it has already been adjudicated that the plaintiff has a good cause of action against this defendant, by the affirmance by this court of an order denying a motion to dismiss the complaint.   (208 App. Div. 799.)   Upon that motion, however, the sufficiency of the complaint was being tested as upon a demurrer.   It is sufficient to say that the allegations of the complaint are broader than the proof adduced at the trial.   The complaint was broad enough to admit of proof of active fraud against creditors and of an admittedly established claim against the debtor, which might bring the case within the spirit of the rule stated in *Trotter* v. *Lisman* (209 N. Y. 174).   The proof adduced at the trial, however, as noted, failed to establish a fraudulent transfer, failed to show lack of authority to transfer, insolvency, or want of consideration, and that any claim of the plaintiff was uncollectible from assets of the debtor other than those received by the defendant.   Upon the other hand, it appears that the transfer of the assets was made in good faith with full authority while the debtor was solvent and that full value was received for the assets, and that there are assets at present existing available to the creditor.

It follows that the judgment appealed from should be reversed, with costs, and the complaint dismissed, with costs.

DOWLING, P. J., McAVOY, MARTIN and O'MALLEY, JJ., concur.

Judgment reversed, with costs, and the complaint dismissed, with costs.   Settle order on notice.