FRENKEL & Co., INC., Appellant and Respondent, v. L'URBAINE FIRE INSURANCE COMPANY OF PARIS, FRANCE, Respondent and Appellant, Impleaded with Others.

(Argued May 27, 1929; decided July 11, 1929.)

*Ralph Earl Prime, Jr.*, and *W. C. Prime* for plaintiff, appellant and respondent. The first separate defense is insufficient in law. (*Lawrence* v. *Fox,* 20 N. Y. 268; *James* v. *Second Russian Ins. Co.,* 239 N. Y. 248; *Russian Reinsurance Co.* v. *Stoddard,* 240 N. Y. 149.) The second

separate defense is palpably insufficient. (*St. John* v. *Fowler*, 229 N. Y. 270; *Bigelow* v. *Old Dominion Co.*, 225 U. S. 220; *Alaska Commercial Co.* v. *Debney*, 2 Alaska, 303; *U. S. Life Ins. Co.* v. *Hellinger*, 130 App. Div. 415; *Farrell* v. *Farrell*, 122 App. Div. 605; *Matter of Neidnig*, 123 App. Div. 894; *Cook* v. *Conners*, 215 N. Y. 175.)

*Hartwell Cabell* and *Blaine F. Sturgis* for defendant, respondent and appellant. The first defense is sufficient in law on its face and was properly sustained by both lower courts. (*Stoehr* v. *Wallace*, 255 U. S. 239; *Schrijver* v. *Sutherland*, 19 Fed. Rep. [2d] 688; *Brown* v. *United States*, 8 Cranch, 122; *Conrad* v. *Waples*, 96 U. S. 279; *Miller* v. *United States*, 11 Wall. 268; *Hilton* v. *Guyot*, 159. U. S. 113; *Johnston* v. *Comp. Generale Transatlantique*, 242 N. Y. 381.) The second separate defense pleads a French judgment as *res adjudicata*, and is sufficient in law on its face. (*Ter Knile* v. *Marsland*, 81 Hun, 420; *Deagen* v. *Weeks*, 67 App. Div. 410; *State* v. *Torinus*, 28 Minn. 175; *McArthur* v. *Moffett*, 143 Wis. 564; *Munich Reinsurance Co.* v. *First Reinsurance Co.*, 300 Fed. Rep. 345; *Disconto-Gesellschaft* v. *U. S. Steel Co.*, 267 U. S. 22; *Risley* v. *Phenix Bank*, 83 N. Y. 318; *Broadway C. S. Corp.* v. *Buchanan Rest. Co., Inc.*, 218 App. Div. 594; *Mutzenbecher* v. *Ballard*, 16 Fed. Rep. [2d] 173; *Miller* v. *Rouse*, 276 Fed. Rep. 715; *Matter of Bendheim*, 124 Misc. Rep. 424; 214 App. Div. 716; *Matter of Bendit*, 214 App. Div. 446; *Gould* v. *Gould*, 235 N. Y. 14; *Russian Republic* v. *Cibrario*, 235 N. Y. 255; *Johnston* v. *Compagnie Generale, etc.*, 242 N. Y. 381.)

O'BRIEN, J. Alfred and Robert Scharnberg are German nationals and, as partners, conducted an insurance business in Paris. Defendant L'Urbaine Compagnie Anonyme d'Assurances contre l'Incendie is a French corporation and has its principal office in that city. On December

10, 1913, at Paris, they executed a written contract, confirming a previous oral agreement whereby the partnership, in consideration of services which it had then fully performed in procuring representation by an agent for the corporation in the United States, became entitled to commissions on premiums to be collected in dollars by that agent in this country during the fifteen years to ensue from January 1, 1913. The Scharnbergs' services for defendant were rendered with the assistance of and in collaboration with plaintiff, a New York corporation. Since the year 1910 a written agreement has existed between plaintiff and the Scharnbergs for an equal division of all net profits arising from their joint transactions. The declaration of war between the French Republic and the Imperial German Government occurred August 3, 1914, and on August 27, Scharnberg & Company, for value, assigned its interest in the contract to plaintiff. The place where this assignment was made does not appear. The French corporation is alleged to have collected more than twenty million dollars in premiums on insurance effected by its American agent during the years 1920 to 1926, inclusive. No commission has been paid on these premiums either to Scharnberg & Company or to its assignee. Plaintiff, as assignee for value, demands an accounting for those years. Two separate defenses are pleaded in the answer. By certified questions we are asked to decide their sufficiency.

The first separate defense quotes the French statute enacted September 27, 1914, which is declared by its terms to be retroactive to August 4, 1914. Article 2 of this act provides: "Any agreement or contract drawn in any and every place between French citizens * * * and subjects of the Empire of Germany * * * is null and void as contrary to public policy. The annulment provided for in the foregoing paragraph will commence on the date of August 4, 1914 * * * and shall have force and effect during the whole period of hostilities and up to

and until the date which shall be declared later by further decree." Article 3 provides: " During the same period it is forbidden and declared void and as contrary to public order to carry out for the benefit of subjects of the Empire of Germany * * * monetary obligations or other obligations arising out of any agreement or contract entered into prior to the date stated in paragraph 2 of Article 2 hereof either on French territory or on territory under French protection by any person whatsoever and in whatsoever place, by French citizens or persons under the French Protectorate." The later statutes, decrees, ordinances, administrative acts and treaty provisions which are also pleaded in the first separate defense add nothing to the effect produced by this statute. If its intent has been correctly interpreted by the courts below and if comity requires us to enforce that intent against our own citizen who, before the enactment .of the law, became an assignee for value, then the case has been rightly decided.

The literal terms of the first paragraph of article 2, standing alone, might be read as sufficiently comprehensive to include the annulment and avoidance of every contract which had ever been drawn anywhere between French and German nationals, but hardly conceivable is it that a modern civilized government would undertake the task of enforcing a law so sweepingly confiscatory and certain to encounter bitterest opposition and obstruction from every neutral nation whose citizens, before the declaration of war, had acquired substantial rights under some of those contracts. In all probability no such scope was designed. The range of operation must be gauged as far less extensive than a literal interpretation of the first paragraph might perhaps justify. The two articles read together in their entirety may be taken to display an intent that the statute should be prospective as of the date of the declaration of war. Every contract between French and German nationals drawn after that date was

made null and void. Every contract between those nationals executed prior to that date was forbidden to be carried out, after that date, for the benefit of German subjects. The contract in suit was made between Frenchman and German long before the declaration of war and consequently it does not come within the condemnation of article 2. The assignment of that contract after August 4 was by a German to a citizen of this State but the facts as pleaded in the answer do not take it within the operation of article 3. The prohibition of this article is directed against contractual performance for the benefit of German subjects. It does not assume to deal with performance which can be beneficial only to others. When the complaint alleges an assignment for value to one who is not a German subject, the special defense, as far as article 3 is concerned, is defective for failure to allege an intention to leave the beneficial ownership in the German. The purpose of this article is doubtless similar to that of our own war-time statute which was interpreted in *Stoehr* v. *Wallace* (255 U. S. 239). This plaintiff has always owned a half interest in this contract and by the assignment for value of the Scharnbergs' half, it acquired the whole. In view of the pleading, we do not need to decide the nature of plaintiffs' rights, if any, in the event that the answer should allege that the assignment was a cover or a sham and that plaintiff holds the cause of action to the use of its German assignor. Apparently the French Republic never attempted to assert the far-reaching power to confiscate contracts made before the war, especially those in which friendly neutrals were interested. A learned author who has studied the French decisions concludes that the decree " did not annul any existing contracts, not even those the execution of which would inure to the benefit of the enemy; it went no further than to suspend performance of the stipulations during the existence of the war." (1 Garner on International Law and the World War, § 173.)

If, however, the decree were to be read as intended to include the contract in suit and its assignment, to the plaintiffs, we think there is no principle of private or public international law that imposes on our courts a duty to enforce it. We would depart from our settled rule if we were to hold that either comity or public policy would require us to give effect to a confiscatory mandate of a foreign power against our own citizen. (*James & Co. v. Second Russian Ins. Co.*, 239 N. Y. 248, 257; *Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149, 163.) The moneys for which this action is brought did not fall due while hostilities were in progress. They accrued after the peace. Since April, 1922, defendant has paid nothing to the French liquidator and the record does not indicate that that official now makes any claim to them. Certainly they have not been seized and sequestered. Assuming that the war power includes the right to confiscate a debt due to an enemy national, confiscation is not consummated by mere declaration. The debt does not automatically become vested in the government. It seems that actual payment must be exacted. (*Ware* v. *Hylton*, 3 Dallas [U. S.], 199, 226.) Plaintiff in its brief disclaims any intention of an attempt to require double payment. The original contract was valid. The assignment for value is not shown to have been infected by any fraud nor even by a secret intent to leave the actual beneficial interest in the assignor; it was not forbidden by any law when it was made nor does its subject-matter consist of tangible property the situs of which is within a foreign jurisdiction. (*Direction Der Disconto-Gesellschaft* v. *U. S. Steel Corp.*, 267 U. S. 22; *Schrijver* v. *Sutherland*, 19 Fed. Rep. [2d] 688.) This intangible property right is a chose in action and is the outgrowth of business transacted in this country through defendant's American agent. Since the year 1910, plaintiff has possessed a half interest in it. We think, therefore, that the first defense on its face is not sufficient in law.

In respect to the second separate defense, we agree with the reasoning and result at the Appellate Division. Accordingly, the order should be modified by reversing so much thereof as sustains the first defense and, as so modified, affirmed, with costs to the plaintiff in the Appellate Division and in this court. The certified questions should be answered " No."

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and HUBBS, JJ., concur.

Ordered accordingly.